UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNNY TIPPINS #342855,

    Plaintiff,

v.

ANTHONY IMMEL, et al.,

    Defendants.

_____/

Case No. 2:18-cv-00069

Hon. Janet T. Neff
U.S. District Judge

# REPORT AND RECOMMENDATION

## I.   Introduction

This is a civil rights action brought by state prisoner Johnny Tippins pursuant to 42 U.S.C. § 1983. Tippins asserts am Eighth Amendment failure-to-protect claim against Defendants Deputy Warden Anthony Immel, Resident Unit Manager G. Scheam, Prison Counselor K. Chamberlin, and Deputy Warden Scott Sprader. This Report and Recommendation addresses Defendants' Motion for Summary Judgment (ECF No. 140); Tippins's Rule 56(d) Motion and Declaration Explaining Need for Additional Discovery (ECF No. 142); and Tippins's Motion for Declaratory Judgment (ECF No. 150). For the reasons stated below, the undersigned respectfully recommends that the Court grant Defendants' Motion for Summary Judgment and deny Tippins's motions.

## II.  Facts

In January 2018, Tippins was incarcerated at the Chippewa Correctional Facility (URF). While incarcerated at URF, an inmate named "Chris" told Tippins

that another inmate at URF – known as "Ray-Ray" – was planning to attack Tippins. "Ray-Ray" was apparently related to the victim that Tippins was convicted of murdering in state court. Based on this conversation, Tippins requested protection at URF. Tippins was subsequently transferred to the Alger Correctional Facility (LMF).

In February 2018, Tippins overheard a conversation between other prisoners that led him to believe that "Ray-Ray" was still planning to attack him at LMF. Specifically, Tippins claims that he heard that an inmate named "A-1" was "orchestrating" an attack against him on behalf of Ray-Ray. Shortly thereafter, Tippins submitted a request for protection at LMF and was placed in protective segregation.

On March 5, 2018, Tippins met with Defendant Prison Counselor Keith Chamberlin regarding his protection request. According to Tippins, Defendant Chamberlin asked Tippins about his need for protection, and Tippins responded that he wanted to be transferred to a safe prison. Defendant Chamberlin told Tippins that he was going to investigate this matter.

In an affidavit, Defendant Chamberlin describes how he investigated this matter. Tippins could not identify any of the prisoners who he overheard talking about the alleged planned attack. He told Defendant Chamberlin that Ray-Ray's last name was "Raymond" but could not provide any other information. Because of the lack of specific details, Defendant Chamberlin focused the investigation on identifying "Ray-Ray" at URF. Defendant Chamberlin searched for all prisoners with

2

the last name Raymond in the Offender Tracking and Information System (OTIS). Defendant Chamberlin then used the Offender Management Network Information (OMNI) to look at the lock histories of the prisoners he identified through his OTIS search. He found two prisoners with the last name Raymond that locked at URF, but neither Raymond locked at URF at the same as Tippins. Based on Defendant Chamberlin's investigation, Defendants Schram and Immel concluded that there was no need for protection. Therefore, Defendants Schram and Immel signed the Request for Protection/Investigation Report, which stated: "No need for protection is required at this time per this investigation and the prisoner's own statements. Prisoner is willing to be housed in General Population Re-integration at LMF as soon as bed space becomes available in full accordance with LMF OP 04.05.120-D." (ECF No. 44-1, PageID.229.)

On March 9, 2018, Tippins was ordered to pack up his property and move from protective segregation to Cedar Unit. After Tippins refused, he was issued a Class I misconduct ticket for disobeying a direct order.

Over the next several months, Tippins remained in administrative segregation because he refused to return to general population. During this time, Tippins met at various times with the Security Classification Committee, which included Defendants Immel, Schram, and Sprader. At these meetings, Tippins claimed that Defendant Chamberlin lied in his investigation. Tippins alleges that Defendants Immel, Schram, and Sprader never acted on his complaints.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Analysis

#### A. Tippins's "Rule 56(d) Motion and Declaration Explaining Need for Additional Discovery"

Before addressing the merits of Defendants' Motion for Summary Judgment, the undersigned must first address Tippins's filing in response to that motion. On August 21, 2019, Tippins filed "Plaintiff's Rule 56(d) Motion and Declaration Explaining Need for Additional Discovery." (ECF No. 142.) In this filing, Tippins argues that the Court should refrain from ruling on Defendants' Motion for Summary Judgment. But Tippins also included a section in his purported motion that directly addresses one of Defendants' summary judgment arguments. In fact, Tippins devoted

4

eight pages to arguing that his Eighth Amendment claim involved a physical injury, and, therefore, he should be able to seek damages for mental or emotional injuries under the PLRA. (ECF No. 142, PageID.818-825.) Thus, Tippins's filing does respond to Defendants' Motion for Summary Judgment.

As mentioned above, Tippins asks that the Court refrain from ruling on Defendants' Motion for Summary Judgment. He argues that (1) he needs additional discovery, and (2) Defendants' Motion for Summary Judgement was filed prematurely because several motions are still pending. Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure provides a "mechanism for a plaintiff and the courts to give effect to the well-established principle that the plaintiff must receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009) (internal quotation marks omitted). The rule provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

The Sixth Circuit has stated that "the plaintiff is required to file an affidavit or motion explaining what material facts he hopes to uncover by the requested discovery." *Cardinal*, 564 F.3d at 797. "If the plaintiff makes only general and conclusory statements in his affidavit regarding the needed discovery, lacks any

5

details or specificity, it is not an abuse of discretion for the district court to deny the request." *Id.* at 797-98.

Here, Tippins failed to make the requisite showing in his first declaration. To his credit, Tippins recognized this when he filed an unauthorized reply brief and included a new declaration in which he believes meets the standard. (ECF No. 148.) But Tippins's second declaration falls short as well. In his second declaration, Tippins explains that he needs more time for discovery so he can obtain the following documents: (1) a 2017 Critical Incident Report from an incident that occurred in "Pine Unit" involving other prisoners; (2) an email from Defendant Immel to Defendant Chamberlin; and (3) Master Count Sheets from URF. These issues were raised by Tippins in a motion to compel (ECF No. 127) and the Court recently denied this motion. Thus, Tippins does not need time to obtain this additional discovery.

Tippins also wishes to "explore the reason" why Defendant Chamberlin allegedly removed names from his OTIS search. This issue was raised by Tippins in his Motion for Hearing on Spoliation of Evidence. (ECF No. 112.) Again, the Court recently denied Tippins's motion because he failed to show that any evidence was destroyed or altered. Finally, Tippins states that he needs more time for discovery because Defendants did not properly respond to some of his discovery requests. But Tippins failed to properly raise any of these issues in a motion to compel and the deadline for filing motions to compel was July 5, 2019. (ECF No. 123). Accordingly, Tippins has failed to show that any additional discovery is needed in this case.

6

Tippins also argues that Defendants' Motion for Summary Judgment was filed prematurely because there were several pending motions in this matter. Tippins is correct that he had several motions pending before the Court at the time Defendants filed their motion. But the fact that Tippins filed motions does not alter the court-ordered deadlines. The deadlines remain the deadlines unless the Court changes them. Here, the undersigned issued an order on May 14, 2019, extending the discovery deadline to July 10, 2019 and requiring that all dispositive motions be filed no later than 30 days after the discovery deadline. (ECF No. 100.) Defendants complied with this order and filed their Motion for Summary Judgment before the deadline. Thus, Defendants' motion was not filed prematurely.

Because Tippins has not shown that additional discovery is needed and Defendants' Motion for Summary Judgment was not filed prematurely, the undersigned respectfully recommends that Tippins's Rule 56(d) motion be denied.

### B. Eighth Amendment

Tippins alleges that Defendants violated his Eighth Amendment rights. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.

7

Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

The Supreme Court has held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). (internal quotation marks and citation omitted). A failure-to-protect claim under the Eighth Amendment has an objective and a subjective component. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). To satisfy the objective component, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Curry*, 249 F.3d at 506 (quoting *Farmer,* 511 U.S. at 834). To satisfy the subjective component, a plaintiff also must show that prison officials acted with "deliberate indifference" to inmate health or safety. *Farmer,* 511 U.S. at 834. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, the undersigned does not need to address whether Tippins satisfied the objective prong because he failed to meet the subjective prong.  Tippins alleges that the family of the victim in his criminal case is planning to attack him. Tippins told Defendant Chamberlin that he overheard prisoners talking about a planned attack, but he could not identify any of those prisoners. Tippins also explained that an inmate at URF known as "Ray-Ray" with the last name "Raymond"

8

was orchestrating the attack. Based on this information, Defendant Chamberlin investigated whether Tippins was in danger.

Defendant Chamberlin focused the investigation on identifying "Ray-Ray" at URF. Defendant Chamberlin searched for all prisoners with the last name Raymond in the Offender Tracking and Information System (OTIS). Defendant Chamberlin then used the Offender Management Network Information (OMNI) to look at the lock histories of the prisoners he identified through his OTIS search. He found two prisoners with the last name Raymond that locked at URF, but neither Raymond locked at URF during the relevant time period. Because he could not verify any of Tippins's allegation, Defendant Chamberlin concluded that there was no need for protection. The other Defendants agreed with Defendant Chamberlin's conclusion and signed-off on his decision.

It appears from the record that Tippins honestly believes that some prisoners are planning to attack him. But the record does not establish that any of the Defendants acted with deliberate indifference to that risk by (1) subjectively perceiving facts from which to infer a substantial risk to the Tippins, (2) drawing the inference, and (3) then disregarding that risk. *See Farmer,* 511 U.S. at 834. Instead, Defendants adequately investigated this matter based on the limited information that Tippins provided. Defendant Chamberlin could not find an individual with the last name Raymond who was incarcerated at URF during the relevant time period.[1]

---

[1] Even now, Tippins cannot provide any additional information about "Ray-Ray" except his unsupported assertions that Defendants must be altering evidence.

9

In the opinion of the undersigned, Defendants were not deliberately indifferent in investigating Tippins's allegations.

### C. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. *Id.* The court may consider either approach without regard to sequence. *Id.* Because the undersigned

10

finds that there was no constitutional violation, Defendants are entitled to qualified immunity.

## V.     Declaratory Judgment

Finally, Tippins filed a "Motion for Declaratory Relief," in which he requests that the Court "issue an order directing Alger Correctional Facility (LMF) to employ 21 African-Americans (7 African-Americans per shift) where there is no employee correctional officers at that facility that is African-American." (ECF No. 150.) Tippins states that "African American employees are needed at this facility to relate to black inmates['] lifestyle and situation." Tippins further asks the Court to issue an order directing LMF officials to "properly investigate protection[] requests and prohibit LMF official from directing inmates to go back to a unit where a conflict had ensued . . . ." (ECF No. 150, PageID.898.)

Tippins's motion should be denied for several reasons. First, as described above, Tippins has failed to show that his Eighth Amendment rights were violated, and the undersigned respectfully recommends that the Court dismiss this case. Second, Tippins did not include this requested relief in his complaint. Third, Tippins is no longer incarcerated at LMF.  Fourth, courts generally do not interfere with the hiring of prison employees because any interference by the federal courts in the administration of state prisons is necessarily disruptive. *See Meachum v. Fano*, 427 U.S. 215, 229 (1976) (stating that "[t]he federal courts do not sit to supervise state prisons, the administration of which is acute interest to the States").

11

## VI. Recommendation

Accordingly, the undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 140) and deny Tippins's motions (ECF Nos. 142 and 150).

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: November 20, 2019

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE